IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LORNA CARMEN HURLEY,

     Plaintiff,

     v.                                          CASE NO. 2:14-cv-12131

CAROLYN W. COLVIN,
     Acting Commissioner of Social Security,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleading (ECF No. 13), Brief in Support of the Defendant's Decision (ECF No. 14) and Plaintiff's Reply to Defendant's Brief in Support of Decision (ECF No. 17).

<u>Background</u>

Lorena Carmen Hurley, Claimant, protectively applied for supplemental security income (SSI) under Title XVI of the Social Security Act and disability insurance benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act on July 24, 2008, alleging disability onset date of February 15, 2006 (Tr. at 304-315). The claims were denied initially on October 29, 2008 (Tr. at 151-155 and 156-160) and again upon reconsideration on February 5, 2009 (Tr. at 162-164 and 165-167). Claimant filed a written request for hearing on March 2, 2009 (Tr. at 168-169). In her request for a hearing before an Administrative Law Judge (ALJ), Claimant stated the she disagreed with the determination made on her claim because the decision was contrary to the medical evidence and regulations (Tr. at 168). On September 23, 2009, Claimant appeared via video teleconference from Parkersburg, West Virginia, and testified at a hearing

before Toby J. Buel, Sr., Administrative Law Judge, presiding over the hearing from Charleston, West Virginia (Tr. at 33-68). On December 11, 2009, an unfavorable decision was issued. On February 4, 2010, a request for review of the hearing decision was filed with the Appeals Council. The case was remanded by the Appeals Council.

On January 10, 2013, Claimant appeared via video teleconference from Parkersburg, West Virginia, and testified at a hearing before James P. Toschi, Administrative Law Judge, presiding over the hearing from Charleston, West Virginia (Tr. at 69-107). In the Decision dated January 16, 2013, the ALJ determined that Claimant was not entitled to DIB or SSI because she was not disabled under the Social Security Act (Tr. at 8-31). On February 7, 2013, Claimant requested a review by the Appeals Council because the decision was contrary to the medical evidence and regulations (Tr. at 7). On January 17, 2014, the Appeals Council received additional evidence from Claimant which was made part of the record (Tr. at 5). That evidence consisted of Representative's Brief dated February 7, 2013, admitted as Exhibit 29E. On January 17, 2014, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1). The Appeals Council stated that it considered Claimant's disagreement with the decision and the additional evidence. The Appeals Council found that the information did not provide a basis for changing the ALJ's decision (Tr. at 1-2).

On March 12, 2014, Claimant brought the present action requesting this Court to review the decision of the defendant and that upon review, it reverse, remand of modify the decision.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2014).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2014).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date through her date last insured (Tr. at 14).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of arthralias, obesity, degenerative disc disease and adjustment disorder with mixed anxiety and depressed mood.  (*Id.*)  At the third inquiry, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or equals the level of severity of any listing in Appendix 1 (Tr. at 18).  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations[1]. Transferability of job skills is not material to the determination of disability because Claimant has been found to be "not disabled" (Tr. at 30).  As a result, Claimant can perform occupations such as photocopy machine operator, mail clerk and laundry folder. (*Id.*)   On this basis, benefits were denied (Tr. at 31).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

---

[1] The ALJ held that Claimant can perform light work except with a sit/stand option for one hour; can never climb ladders, ropes or scaffolds, kneel or crawl and she can occasionally climb ramps and stairs, balance, stoop and crouch; unlimited manipulative abilities, unlimited visual abilities; avoid all exposure to hazards and concentrated exposure to extreme cold, extreme heat, and vibration; can understand, remember and carry out detailed instructions and tasks with occasional interaction with the public and no fast-paced work or strict production quotas (Tr. at 21).

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on January 15, 1965. She was 41 years of age on the alleged disability onset date. Claimant is divorced and lives with her mother. She has a driver's license and a Class-A commercial driver's license. Claimant testified to having a bachelor's degree (Tr. at 45). She has work experience as a tractor-trailer driver as well as work experience in fast food, computers and customer service.

This case was previously remanded by the Appeals Council to the Administrative Law Judge (ALJ). In its remand order, the Appeals Council directed the ALJ to give further consideration to Claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; further evaluate Claimant's subjective complaints and provide rationale in accordance with the regulations pertaining to evaluation of symptoms; and, if warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Claimant's occupational base. The hypothetical questions should reflect the specific capacity limitations established by the record as a whole. The vocational expert will be asked to identify examples of

5

appropriate jobs and to state the incidence of such jobs in the national economy and to resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the selected Characteristics of Occupations.  Upon remand[2], the ALJ held that Claimant is not disabled under the Social Security Act (Tr. at 31).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that ALJ's findings at steps four and five of the sequential process are not supported by substantial evidence (ECF No. 13).  First, Claimant asserts the ALJ failed to comply with the regulations in his evaluation of the testimonies of physicians.  Second, Claimant asserts that the ALJ's residual functional capacity assessment did not comply with his own findings at steps four and five of the sequential process.  Third, Claimant asserts that the ALJ's decision is not supported by substantial evidence as it contains multiple inconsistencies and unresolved conflicts of evidence.  Last, Claimant asserts that the ALJ did not properly evaluate her credibility.  Defendant asserts the ALJ properly evaluated the medical evidence, weighed the medical opinions, properly assessed Claimant's credibility and reasonably gave weight to the opinions of physicians (ECF No. 14).

Medical Record

On November 27, 2006, Claimant visited the emergency room (ER) complaining of a "4 week history of joint pain and swelling, fatigue and fevers.  Poor appetite also" (Tr. at 516).  X-rays of her left wrist and hand showed no abnormality or arthritic changes (Tr. at 523-524).  On discharge, she was not instructed to limit or restrict any of her physical or manipulative activities (Tr. at 518-519).

---

[2]  The remand hearing decision is dated January 16, 2013.

On February 1, 2007, Claimant visited rheumatologist G. S. Brar, M.D., complaining of joint pain (Tr. at 528-529).  Dr. Brar noted that Claimant's allegation of November 2006, when she suddenly developed signs and symptoms of synovitis, redness, heat and swelling in her fingers, wrists, feet, ankles, elbows, shoulders and hips.  Dr. Brar further noted that Claimant had gone to the ER in November 2006, and that x-rays of her hands and wrists were normal.  On examination, Dr. Brar also noted moderate arthralgia on range of motion, tenderness involving the left elbow and active synovitis and/or tenderness of several finger joints.  Dr. Brar ordered tests and prescribed Prednisone and Naproxen for complained-of symptoms.  Dr. Brar set a follow-up appointment in 2 weeks. (*Id.*)

Just two weeks later, on February 15, 2007, Dr. Brar noted that a peripheral joint examination was normal, a functional status assessment was also normal and Claimant's symptoms had resolved completely (Tr. at 529).  Dr. Brar also noted that tests for rheumatoid factor; ANA screen; Parvovirus serology; hepatitis profile; TSH; comprehensive metabolic profile, including liver and kidney function; muscle enzymes; and anti-CCP antibody were all negative or normal.  Dr. Brar gave Claimant a schedule to taper and discontinue Prednisone and told her to continue Naproxen for symptom control.  A return appointment in six months was indicated, but there is no evidence of any further visits.

On March 15, 2007, Claimant visited family physician Jason Barton, D.O.  Although Dr. Barton noted "some very slight synovial sponginess [thickening] of the wrists, elbows and knees," he also noted that Claimant had "full range of motion of all joints," "no crepitation of any joints," and no edema in her extremities.  Dr. Barton recommended continuing Naproxen.  Dr. Barton's notes reflect that Claimant smokes and drinks alcohol (Tr. at 591).  On June 21,

2007, Dr. Barton noted that blood work and x-rays taken on June 7, 2007, were negative (Tr. at 590, 594-596).

On October 18, 2007, Dr. Barton noted that although Claimant complained of "tender ankles" and diffuse muscle tenderness along the first and second MCP joints, she had no clubbing, cyanosis or edema (CCE); no rheumatoid nodules; and no erythema or effusion. Dr. Barton prescribed a short (5-day) course of Prednisone for symptoms (Tr. at 589).

On December 6, 2007, Dr. Barton again noted only "some very mild synovial sponginess of the wrists, knees and elbows," but no edema. Claimant was to continue Naproxen. Claimant did not complain of any alleged manipulative limitations and Dr. Barton did not instruct Claimant to limit or restrict any of her physical or manipulative activities (Tr. at 589). On July 17, 2008, Claimant complained of "tennis elbow." She was advised to resume Naprosyn (Tr. at 587).

On September 4, 2008, Claimant complained of worsening symptoms, but objective findings were essentially normal. Dr. Barton noted some mild effusion of MCP joints and tenderness along the right elbow, right knee and right ankle, but no CCE; no nodules; and joints were neither erythematous nor warm. Dr. Barton prescribed another short course of Prednisone (Tr. at 586). At Claimant's last visit to Dr. Barton on December 4, 2008, she had no physical complaints (Tr. at 586).

On October 28, 2008, based on a review of the entire record, state agency medical consultant Atiya M. Lateef, M.D., opined that the evidence demonstrated that Claimant had no manipulative limitations (Tr. at 577). Dr. Lateef also opined that based on the evidence, Claimant could perform light work with some postural and environmental limitations (Tr. at 575-581).

On March 3, 2010, Stephen Nutter, M.D., conducted a consultative physical examination at the request of the state agency (Tr. at 674).   On examination, Claimant had full range of motion in her upper extremities bilaterally, including wrists.   Although there was mild tenderness in her left wrist, there was no tenderness in her right hand or either elbow and there was no redness, warmth, swelling or nodules throughout (Tr. at 676).   Claimant also had full range of motion in all of her finger joints bilaterally.   Further, there were no Heberden's or Bouchard's nodes.   She was able to make a fist with either hand, she had normal and full (5/5) grip with either hand (Tr. at 677).   Dr. Nutter noted that there was no evidence of rheumatoid arthritis or ulnar deviation (Tr. at 678).

On March 17, 2010, based on another review of the entire record, Dr. Lateef opined that the evidence demonstrated that Claimant still had no manipulative limitations (Tr. at 683).   Dr. Lateef also opined that based on the evidence, Claimant could still perform light work with some postural and environmental limitations (Tr. at 681-687).

On December 3, 2010, Claimant visited family physician Brandon M. Wolfe, D.O.   Dr. Wolfe noted that Claimant was in no acute distress, she was pleasant and conversational and fully alert and oriented.   Neurological signs were fully normal, with no focal deficit or asymmetry and equal grip strength in both hands.   A musculoskeletal and osteopathic examination was normal and revealed full range of motion throughout (Tr. at 784).   Dr. Wolfe recorded the exact same findings in subsequent examinations on February 14, 2011, February 25, 2011, May 13, 2011, September 16, 2011, and on September 19, 2012 (Tr. at 788, 790, 794, 799, 872).

On June 5, 2012, Sushil M. Sethi, M.D., conducted another consultative physical examination at the request of the state agency (Tr. at 729).   On examination, Claimant had full

9

range of motion in her upper extremities bilaterally, including normal elbows and wrists. Tinel's and Phalen's signs were negative and there was no evidence of any tendonitis, bursitis or synovitis (Tr. at 730, 732). Claimant also had full grip strength, she could make a fist with either hand, she could fully extend both hands and she could perform oppositional finger maneuvers (Tr. at 732). Dr. Sethi concluded that Claimant was capable of continuously using both hands for all activities including reaching (including reaching overhead), handling, fingering, feeling and pushing/pulling (Tr. at 736).

<u>Testimonies of Medical Experts</u>

On September 29, 2009, Dr. Robert Marshall testified as a medical expert at Claimant's original hearing. Dr. Marshall testified that multiple physicians in the record had confirmed Claimant suffered from a type of inflammatory arthritis (Tr. at 61). Dr. Marshall explained that while none of the physicians have been able "to put a label" on the condition, this inability to definitively diagnose sometimes happens. (*Id.*) Dr. Marshall stated the best description for Claimant's condition was "seronegative polyarthritis," which is similar to lupus or rheumatoid arthritis (*Id.*) Dr. Marshall further explained that while all of the tests were negative, there is "definite evidence of an inflammatory state" characterized by joint swelling, generalized weakness, fever, a raised white cell count and an elevated sedimentation rate (Tr. at 62). Dr. Marshall clarified that a sedimentation rate is a nonspecific test but is positive when "there are certain body-wide inflammatory conditions" present, such as neoplastic conditions, rheumatoid disease or myeloma. (*Id.*)

Dr. Marshall explained that Claimant had some type of interstitial inflammatory disease that was more than fibromyalgia and caused chronic flairs (Tr. at 64). Dr. Marshall testified the Claimant could do no more than light work, could not do any manipulative work with her hands

and would have additional environmental and postural limitations (Tr. at 65).  Dr. Marshall stated the Claimant could not perform work that required frequent or repeated manipulation with her hands as they would "tire out very quickly and become sore." (Tr. at 66).  Dr. Marshall also testified the Claimant had an objective source of pain that would possibly interfere with her ability to concentrate (Tr. at 67).

On January 10, 2013, Dr. Judith Brendemuehl testified as a medical expert at Claimant's remand hearing.  Dr. Brendemuehl testified Claimant carried diagnoses for inflammatory polyarthropathy and obesity (Tr. at 74-75).  Based on these conditions, Dr. Brendemuehl stated Claimant would be limited to light work with a sit/stand option hourly, could never climb ladders, ropes or scaffolds, kneel or crawl, but could occasionally perform all other postural activities (Tr. at 75-76).  Dr. Brendemuehl also stated the Claimant should avoid concentrated exposure to heat, cold, vibration and all heights and hazards (Tr. at 76).

<u>Standard of Review</u>

The role of this Court, on judicial review, is to determine whether the Commissioner's final decision is supported by substantial evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Id.*  In applying the substantial evidence standard, the Court should not "reweigh conflicting evidence, making credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir. 1996)).  "When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]."  *Id.*

<u>Discussion</u>

Claimant asserts the ALJ did not properly evaluate her credibility, especially in light of her complex physical impairments and pain.  Claimant asserts that the ALJ's findings at steps four and five of the sequential process are not supported by substantial evidence.  At step four of the sequential evaluation process the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work.  At step five of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education and work experience.

Claimant argues that the ALJ failed to comply with the regulations in his evaluation of contradictory testimonies of Dr. Marshall and Dr. Brendemuehl.  Additionally, Claimant asserts the ALJ's residual functional capacity assessment did not comport with his own findings at steps four and give of the sequential process.

<u>Credibility Determination</u>

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. The Commissioner is required to include in the text of [his] decision a statement of the reasons for that decision.  *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).  The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion.  This duty of explanation is always an important aspect of the administrative charge. . . ."  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

In the present matter, substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. Claimant's statements concerning the intensity,

persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the entire case record (Tr. at 21).

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c) and 416.929.

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the entire case record (Tr. at 22). The ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The ALJ stated that he also considered opinion evidence (Tr. at 21).

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that

13

"[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

In considering a claimant's symptoms, the ALJ must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms.  Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.  For this purpose, whenever a statement about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.

The ALJ's decision contains over 15 pages discussing Claimant's allegations of impairments, her daily activities and relevant objective medical and non-medical evidence as it relates to Claimant's allegations (Tr. at 14-29).  The ALJ's thorough discussion in the decision supporting his credibility determination takes into consideration the 7 factors under SSR 96-7p.

SSR 96-7p states:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416929(c) describe the kinds of evidence, including the factors below, that the adjudicator *must* consider *in addition* to the objective medical evidence when assessing the credibility of an individual's statements:

14

1.   The individual's daily activities;
2.   The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.   Factors that precipitate and aggravate the symptoms;
4.   The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms (emphasis added)

*See also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); *Adkins v. Astrue*, 664 F.Supp. 2d 657, 667-668 (S.D.W.Va. 2009).

<u>Inconsistencies</u>

The ALJ discussed the inconsistencies in Claimant's testimony and assertions (Tr. at 21-23).  Claimant testified at the hearing on January 10, 2013, that she experiences pain every day in her lower back, left shoulder, left elbow, left wrist and knees.  Claimant stated that she uses a heating pad.  She reported difficulty driving at times if she sits too long.  Claimant stated that she can sit for up to 30 minutes and stand or walk for up to ten minutes.  Claimant expressed difficulty standing on concrete floors at Wal-mart and Kroger's.  Claimant reported swelling in her hands, left elbow, left knee, feet and ankles.

Claimant is "reimbursed" for 38-hours a month for caring for her mother.  This reimbursement resulted in a reduction of her food stamps.  Claimant changes, cleans and monitors her mother's insulin pump.  She washes dishes, takes her mother to the store, runs errands, vacuums and does laundry.  Claimant goes to Buffalo Wild Wings to eat.  She reported to going out to eat at a Mexican Restaurant about once a week with her mother (Tr. at 642).  In

2011 and 2012, she reported earnings from the Wood County Senior Services Association, evidently working as a home caregiver (Tr. at 371-372). West Virginia Department of Health and Human Resources' Psychiatrist's Summary reflects that Claimant worked as a bartender (Tr. at 838).

The ALJ held that Claimant's daily activities are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. Additionally, the ALJ held that the record reflects that although Claimant's work activity after the alleged onset date did not constitute disqualifying substantial gainful activity, "it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported" (Tr. at 22).

Claimant receives mental health treatment at Westbrook Health Systems. Claimant reported that her pain affects her mood and causes depression. The ALJ pointed out that Claimant cancelled or failed to show up for doctor appointments on a number of occasions (Tr. at 695). Similarly, the ALJ pointed out that Claimant has not been entirely compliant in taking her prescribed medications. On June 24, 2009, Dr. McPeak noted that it is unclear whether Claimant has been taking her medications as prescribed (Tr. at 699). On July 10, 2012, the record shows that Claimant stopped taking Seroquel on her own because she did not think it was working (Tr. at 831). Concerning her medications, Claimant made inconsistent statements regarding side effects. The ALJ stated that this "suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application" (Tr. at 22).

The medical records reveal that the medications have been relatively effective in controlling Claimant's symptoms. On December 29, 2008, Claimant reported improvement in depressive symptoms with Wellbutrin. Claimant's medical record from Westbrook Health

Services on May 24, 2010, reports that she is tolerating medications well without side effects. Claimant denied symptoms of elevated or depressed mood (Tr. at 689).   On April 22, 2011, records from Westbrook Health Services indicate that Claimant was stable on medications. (Tr. at 818)   Claimant denied symptoms of depression or low mood. (*Id.*)   On October 9, 2012, Westbrook Health Services' report states that "she is psychiatrically stable on her current medications" (Tr. at 831).

The ALJ discussed inconsistencies in the record of Claimant's statements regarding her use of alcohol and drugs (Tr. at 23).   On December 2, 2008, Claimant reported that she stopped using cocaine in 2004 and stopped using alcohol in April 2008.   However, on October 10, 2008, Claimant reported that she drinks alcohol.   On September 16, 2009, Claimant reported that she uses alcohol occasionally, last consuming it in May of 2009.   She indicated to last using drugs one year prior, approximately in September 2008.   Then on March 3, 2010, Claimant reported to Dr. Nutter that she quit using drugs 13 months prior and that she drinks one alcoholic beverage every six months (Tr. at 675).    That same day, Claimant reported to Dr. Wolfe that she drinks alcohol two times a month (Tr. at 715).   On June 5, 2012, Claimant reported to Dr. Sethi that she drinks alcohol once a week.   On June 11, 2012, Claimant reported to Ms. Guthrie that she drinks alcohol two times a month.

The ALJ discussed the inconsistencies in Claimant's reported work activity.   Claimant reported that she worked as a customer service representative from August 2006, through October 2006, which ended due to her impairments.   Inconsistently, Claimant self-reported on her Adult Disability Report dated May 24, 2007, that after she stopped working in October 2006, she began a different job in Florida but then came back to West Virginia (Tr. at 385-392).

Although Claimant's Function Report dated January 20, 2010, reflects that she performs household chores, cares for pets, prepares meals, washes dishes, drives a car and cross-stitches. Claimant alleged on her Disability Report that she is unable to use her left hand (Tr. at 467-474).

<u>Claimant's assertions against steps four and five in the sequential evaluation</u>

20 C.F.R. §§ 404.1529(c)(3) and 416.929 state that "[w]e will consider all of the evidence presented, including information about your work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons." The ALJ thoroughly discussed the opinion evidence of medical experts (Tr. at 23-29). In discussing the weight given to the opinions, the ALJ points out consistencies or inconsistencies with the record as a whole.

At step four in the sequential evaluation, the ALJ held that Claimant is unable to perform any past relevant work. At step five, the ALJ held that "Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" (Tr. at 30). Claimant asserts that the ALJ's finding at steps four and five were in direct conflict with his residual functional capacity finding. Claimant asserts the following:

> Although the ALJ determined the plaintiff had no manipulative limitations, he also found that she was unable to perform her past relevant work as a customer service representative because the job required frequent use of the upper extremities and ability to talk and listen. Given the ALJ determined the plaintiff could not perform her past relevant work due to the requirement of reaching, it also stands to reason that the plaintiff could not perform the other jobs named by the vocational expert – photocopy machine operator (DOT No. 207.685-014), mail clerk (non-postal) (DOT No. 209.687-026) and laundry folder (DOT No. 369.686-018) – all of which require frequent reaching according to The Dictionary of Occupational Titles. (ECF No. 13).

At the hearing, the ALJ directed the vocational expert (VE) to assume a hypothetical individual with Claimant's age, education and work experience. The ALJ stated that the individual had a residual functional capacity for light work with the following additional limitations. She requires sit/stand option every hour. She is to avoid ladders, ropes, scaffolds, kneeling and crawling. She would be limited to occasionally climbing ramps and stairs; occasional balancing, stopping and crouching. She should avoid concentrated exposure to extreme cold, extreme heat, vibration; all exposure to hazards, including heights and machinery. She would be limited to detailed instructions and tasks, occasional contact with the public; not fast-paced work or strict production quotas. The ALJ asked the VE if the individual with those limitations could perform her past relevant work (Tr. at 101). The VE answered No.

The ALJ asked the VE if there would be any other jobs existing in significant numbers in the national or local economy at the light exertional level that the individual could perform. (*Id.*) The VE testified that such an individual could perform work as a photocopy machine operator, mail clerk and laundry folder (Tr. at 102). The VE stated that these positions are light, unskilled occupations. The ALJ instructed the VE to include a sit/stand option. The VE testified that all the jobs provided could be performed with a sit/stand option.

Claimant's counsel asked the VE if the sit/stand option would affect the jobs she stated were available if the hypothetical person were adjusted to include an ability to stand or walk for 10 minutes at a time, could only sit for about 30 minutes before needing to be able to stand up and be on their feet for 10 minutes and then need to sit down again. The VE testified that in her opinion, those limitations would result in the individual no longer being able to work at the light level, therefore it is not an option (Tr. at 103). Claimant's counsel asked the VE if there are jobs at the sedentary level that would allow an individual to sit for 30 minutes, stand for 10 minutes

than sit for 30 minutes.  The VE testified that such an individual could work as a document preparer and dispatcher (Tr. at 104).

Contrary to Claimant's argument, both the ALJ's RFC in his decision and the RFC contained in the hypothetical question presented to the VE at the hearing do not include any manipulative limitations.  When the VE testified that a person such as the hypothetical individual presented by the ALJ could not perform Claimant's past relevant work, the hypothetical did not include any manipulative limitations.  As stated above, this coincides with the ALJ's RFC which provides "unlimited manipulative abilities" (Tr. at 21).  Therefore, the ALJ's findings at steps four and five of the sequential process are supported by substantial evidence.

<u>Weight Afforded Examining Physician Opinion</u>

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  *See* 20 C.F.R. § 416.927(d)(2) (2014).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 416.927(d)(2) (2014). Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.   Sections 416.927(d)(3), (4), and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 416.927(d)(2).

Under § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner.  Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record."  *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

Claimant argues that the ALJ improperly gave "significant weight" to the opinions of Dr. Judith Brendemuehl, who testified at Claimant's remand hearing on January 10, 2013, while rejecting the opinions of Dr. Robert Marshall who testified at Claimant's original hearing which was held on September 23, 2009 (ECF No. 13).  Claimant asserts that "both medical experts testified based on the exact same record as no new evidence from the relevant time period and pertaining to the plaintiff's physical impairments was added to the file since the first hearing." Claimant asserts that Dr. Brendemuehl and Dr. Marshall testified regarding her manipulative limitations.

Dr. Brendemuehl's testimony at the hearing on remand included references to evidence that was not presented at the original hearing (Tr. at 74-75).  Dr. Brendemuehl specifically addressed Dr. Nutter's consultative examination report dated March 3, 2010, and Dr. Sethi's consultative examination report dated June 5, 2012, which are new evidence added to Claimant's file since the original hearing.  These two reports contain new evidence from the relevant time period pertaining to Claimant's physical impairments (Tr. at 674-679, 729-739).  Additionally,

Dr. Brendemuehl had the benefit of Dr. Wolfe's records from 2010, which were also relevant to Claimant's allegations of disabling manipulative limitations (Tr. at 784-806, 869-873).

Dr. Brenemuehl testified at the January 20, 2013, hearing that Claimant is limited to light work with postural limitations, requiring sit/stand option hourly, can never climb ladders, ropes or scaffolds and occasionally climb ramps and stairs, balance, stoop and crouch; unlimited manipulative abilities, unlimited visual abilities; avoid all exposure to hazards and concentrated exposure to extreme cold, extreme heat and vibration.   The ALJ "adopted her opinion as part of the residual functional capacity" (Tr. at 28).

Furthermore, contrary to Claimant's assertion that the ALJ rejected the opinions of Dr. Marshall, the ALJ gave Dr. Marshall's opinions some weight "insofar as consistent with other evidence of record" (Tr. at 24).   Dr. Marshall testified that Claimant does not have rheumatoid arthritis.   Dr. Marshall stated that Claimant has seronegative inflammatory arthritis, which has symptoms of lupus, but she does not have lupus.   Dr. Marshall testified that Claimant could perform no more than light work and that she is not completely disabled.   The ALJ disagreed with Dr. Marshall's opinion regarding Claimant's manipulative abilities because the opinion was inconsistent with Claimant's self-reported daily activities.

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005).   The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record.   20 C.F.R. §§ 404.1527(c)(2) and 416.927.   If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight.   *See* 20

C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work.  These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues.  *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

The ALJ gave "no weight" to the opinions of Mr. Atkinson.  Mr. Atkinson completed a Mental Assessment of Ability to Do Work-Related Activities opining that Claimant has extreme ability to deal with the public and interact with supervisors.  Mr. Atkinson opined that Claimant has marked ability to relate to co-workers, deal with work stresses, behave in an emotionally stable manner and relate predictably in social situations (Tr. at 25-26).  Mr. Atkinson opined that Claimant has moderate ability to follow work rules, use judgment, maintain concentration, understand, remember and carry out complex job instructions and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  The ALJ gave no weight to Mr. Atkinson's opinions because it was inconsistent with other evidence of record and inconsistent with the narrative report itself.  The ALJ pointed out that Claimant has reported various activities that are inconsistent with severe or extreme limitation in social functioning (Tr. at 26).

The ALJ gave "little weight" to the opinions of Dr. Boggess, Dr. Shaver, Dr. McPeak and Mr. Zhang.  The ALJ explained that Dr. Boggess did not have the benefit of reviewing the other

medical reports contained in the updated record (Tr. at 24).  Dr. Shaver completed a psychiatric assessment form and opined that Claimant would have mild limitation in activities of daily living; mild difficulties maintaining social functioning; and mild difficulties in maintaining concentration, persistence and pace; with no episodes of decompensation.  Dr. Shaver opined that Claimant has no severe mental impairment.  The ALJ held that Dr. Shaver did not have the benefit of reviewing the other medical reports contained in the current record, including additional mental health treatment records from Westbrook Health Services and medical expert testimony.  Therefore, the ALJ gave Dr. Shaver's opinion little weight as it is inconsistent with the other evidence of record (Tr. at 25).  Dr. McPeak opined that Claimant has been unable to maintain employment for almost two years due to impaired concentration and persistent depression.  The ALJ gave Dr. McPeak's opinion little weight because "she provided no rationale to support her opinion of disability/incapacity lasting 12 months or more" (Tr. at 25). Mr. Zhang opined that Claimant's prognosis is fair with continued medication management. Mr. Zhang stated that the length of time of incapacity/disability and employment limitation are unknown.  The ALJ held that Mr. Zhang is not an acceptable medical source (Tr. at 27).

The ALJ gave "some weight" to the opinions of Dr. Marshall, Dr. Lateef, Dr. Kuzniar, Dr. Sethi and Mr. Guthrie.  Dr. Marshall testified that Claimant could perform no more than light work.  Dr. Marshall stated that Claimant can lift and carry and do household tasks to a limit.  The ALJ agreed with Dr. Marshall's opinion insofar as consistent with other evidence of record. However, the ALJ disagreed with Dr. Marshall's opinion regarding manipulative abilities because it was inconsistent with Claimant's reported daily activities.  Dr. Lateef completed a physical assessment form and opined that Claimant was limited to light work.  The ALJ held that Dr. Lateef did not have the benefit of reviewing the other medical reports contained in the

current record (Tr. at 25).  The ALJ gave some weight to the opinions of Dr. Lateef insofar as consistent with other evidence of record.

Dr. Kuzniar opined that Claimant has severe mental impairments of ADHD and depression resulting in mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties in maintaining concentration persistence and pace; with no episodes of decompensation.  The ALJ did not accept that Claimant has the severe mental impairment of ADHD (Tr. at 26).   Dr. Sethi opined that Claimant's ability to work at physical activities may be slightly affected.  She opined that Claimants hearing, speaking and traveling are normal.  Dr. Sethi completed a Medical Source Statement of Abilities to Do Work-Related Activities.  Dr. Sethi opined that Claimant could occasionally lift and carry 51-100 pounds and frequently 21 to 50 pounds; sit for eight hours in an eight-hour day, six hours without interruption; stand for six hours in an eight-hour day, three hours without interruption; walk for four hours in an eight-hour day, three without interruption; frequently climb, balance, stoop, kneel, crouch and crawl; can tolerate frequent exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, fumes, gases and pulmonary irritants, extreme cold, extreme heat and vibrations.  The ALJ gave some weight to Dr. Sethi's opinion regarding postural and environmental limitations, but gave little weight to portions of Dr. Sethi's opinion regarding lifting, sitting and standing.

Ms. Guthrie completed a Medical Source Statement of Ability to Work-Related Activities.  Ms. Guthrie opined that Claimant has marked limitation in responding appropriately to usual work situations and to change in a routine work setting.  She opined that Claimant has moderate limitation in her ability to understand, remember and carry out complex work-related decisions, interact appropriately with the public and make judgments on complex work-related

decision. The ALJ gave some weight to Ms. Guthrie's opinion insofar as consistent with other evidence of record.

The ALJ gave "significant weight" to the opinions of Dr. Brendemuehl and Dr. Blair. Dr. Brendemuehl testified that Claimant is limited to light work with postural limitations, requiring sit/stand option hourly, can never climb ladders, ropes or scaffolds, and occasionally climb ramps and stairs, balance, stoop and crouch; unlimited manipulative abilities, unlimited visual abilities; avoid all exposure to hazards and concentrated exposure to extreme cold, extreme heat and vibration. The ALJ gave Dr. Brendemuehl's opinion significant weight as consistent with the objective medical evidence of record and adopted her opinion as part of the residual functional capacity. Dr. Blair testified that Claimant has adjustment disorder with mixed dysphoria and anxiety resulting in moderate limitation in complex instructions, moderate work pace, no limitation in interacting with co-workers and supervisors, occasional contact with the public and she could perform detailed instructions. Dr. Blair testified that Claimant has a history of alcohol and cocaine abuse. The ALJ gave significant weight to Dr. Blair's testimony as consistent with other evidence of record and adopted it as part of the residual functional capacity.

<u>Residual Functional Capacity Assessment</u>

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant possesses the residual functional capacity to perform light work is supported by substantial evidence.

SSR 96-8p states that

> [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an

26

individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 362207, *34477 (1996).

In his decision, the ALJ found that Claimant does not have an impairment or combination of impairments equal in severity to any listed impairment, as no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.  The Court proposes that the presiding District Judge find that the ALJ adequately considered Claimant's non-severe impairments and Claimant's limitations in assessing her residual functional capacity.

<u>Obesity</u>

The Social Security Administration has issued a ruling, SSR 02-1p, to provide guidance on the evaluation of obesity in disability claims.  Obesity is a severe impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. Because there is no listing for obesity in the Code of Federal Regulations, an individual with obesity will be found to meet the requirements of a listing if the individual has another impairment that, by itself, meets the requirements listing.

"[W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 1.00Q (2014); *see also* SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002) (Obesity must be considered when evaluating impairments under the listings and when assessing a claim at other steps of the sequential evaluation process.).

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's obesity, and his findings are supported by substantial evidence. In his decision, the ALJ states that he took the following considerations into account in reaching his conclusions:

> As indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. (Tr. at 18-19).

### Vocational Expert

At the hearing, the ALJ asked a vocational expert whether jobs existed in the regional and national economy for a hypothetical individual with Claimant's age, education, work experience and residual functional capacity. As provided in discussion above, the vocational expert testified that given all of the factors the individual would be able to perform the requirements of representative occupations in light exertion such as photocopy machine operator, mail clerk and laundry folder. The ALJ held that pursuant to SSR 00-4p[3], the VE's testimony is consistent contained in the Dictionary of Occupational Titles.

While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.

---

[3] Social Security Ruling 00-4p requires the ALJ to inquire of the vocational expert about any possible conflict between [the vocational expert testimony] and information provided in the [Dictionary of Occupational Titles (DOT)] and resolve any conflicts. SSR 00-4p.

28

*See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable.

Contrary to Claimant's assertion, the ALJ in the present case posed a hypothetical question that included Claimant's abilities and limitations. Ultimately, the ALJ found that Claimant's impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Substantial evidence supports the determination of the ALJ. The ALJ's decision reflects an adequate consideration of her impairments. The ALJ appropriately weighed the psychological and medical opinions and the evidence of record in its entirety. The ALJ appropriately relied on the evidence as a whole to determine that Claimant is able to perform jobs in existence in the nation and region. Accordingly, the ALJ denied Claimant's application for DIB and SSI under the Social Security Act.

<u>Conclusion</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other

substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13), and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   February 27, 2015

Dwane L. Tinsley
United States Magistrate Judge